UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMKEN ALCOR AEROSPACE TECHNOLOGIES, INC., | ) ) ) | Case No. 1:06-CV-2539 |
| Plaintiff, | ) ) | |
| v. | ) ) | MAGISTRATE JUDGE GREG WHITE |
| ALCOR ENGINE COMPANY, et al., | ) ) | |
| Defendants. | ) ) | MEMORANDUM AND ORDER |

Before the Court is Plaintiff's, Timken Alcor Aerospace Technologies, Inc. ("Timken"), motion to strike the jury demand of Defendants Alcor Engine Company and David Rain (collectively, "Alcor"). [Dkt. 40].  Also before the Court are motions in limine filed by both Alcor and Timken. [Dkt. 41, 42, 43].  For the following reasons, Timken's motion to strike Alcor's jury demand is denied, Timken's motion in limine is granted in part, and Alcor's motions in limine are denied.

I.    BACKGROUND

In 2004, Timken acquired substantially all of Alcor's assets related to the manufacture of replacement parts for the Rolls-Royce Corporation's ("Rolls-Royce") Model 250 helicopter engine. While conducting due diligence prior to closing the purchase, Timken learned of correspondence between Rolls-Royce and Alcor concerning a potential lawsuit over proprietary information (the "Rolls-Royce litigation").

On April 29, 2004, Timken, Alcor, and Rain entered into an asset purchase agreement (the "Agreement"), wherein Timken agreed to purchase substantially all of Alcor's assets and Alcor agreed to indemnify Timken for "Losses" that it might incur in the event of Rolls-Royce litigation.  [Dkt. 37].

Later in 2004, Rolls-Royce filed a lawsuit against Alcor and Timken, claiming that Alcor had misappropriated Rolls-Royce trade secrets and proprietary information prior to Timken's acquisition of Alcor's assets.  Timken and Rolls-Royce eventually settled their dispute.  On October 20, 2006,

Timken filed the instant complaint against Alcor, seeking indemnification for Timken's fees and expenses in the Rolls-Royce litigation. On March 23, 2010, Judge Ann Aldrich entered partial summary judgment in favor of Timken, finding that, under the Agreement, Alcor was liable for the "Losses" that Timken incurred in defending the Rolls-Royce litigation. [Dkt. 37].

On May 28, 2010, Timken filed a motion to strike Alcor's jury demand and Alcor filed its first motion in limine. Timken filed a cross-motion in limine on June 7, 2010. Alcor then filed a second motion in limine on June 7, 2010.

## II.    JURY TRIAL

In federal court, the right to a trial by jury is a matter of federal law, even in cases where jurisdiction rests upon diversity of citizenship. *Simler v. Conner*, 372 U.S. 221, 222 (1963) (per curiam). Under the Seventh Amendment, a party enjoys a limited right to a jury trial in civil cases. The Seventh Amendment provides, in part, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. CONST. AMEND. VII. "[T]he phrase 'Suits at common law' refers to 'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (emphasis and alterations in original).

Timken argues that the reasonableness of a party's attorney fees sounds in equity, which does not implicate a right to a jury trial. In support of this proposition, Timken cites to numerous cases. *See Resolution Trust Corp. v. Marshall*, 939 F.2d 274 (5th Cir. 1991), *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306 (2d Cir. 1993); *The Scotts Co. v. Central Garden & Pet Co.*, 256 F. Supp. 2d 734 (S.D. Ohio 2003); *Redshaw Credit Corp. v. Diamond*, 686 F. Supp. 674 (E.D. Tenn. 1988); *U.S. Bancorp Oliver-Allen Tech. Leasing v. Hall, Dickler, Kent, Goldstein & Wood, LLP*, 04 Civ. 4986, 2005 U.S. Dist. LEXIS 16231 (S.D.N.Y Aug. 8, 2005); and *Quint v. A.E. Staley Mfg. Co.*, 245 F. Supp. 2d 162 (D. Me.

2003). In each of these cases, the court determined that the reasonableness of the requested fees was a matter for the court to decide. Each also, however, involved contracts that provided for fees to be paid to a prevailing party, rendering them distinguishable from the present case which "involves a 'free-standing' breach of contract claim . . . for attorneys' fees already incurred in a separate, underlying action against a third party." *See J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1117 (10th Cir. 2009). In *McGuire*, the concurring opinion specifically noted that the court did not "decide the availability of a jury trial for fees where . . . a claimant seeks contractual indemnification for fees incurred in a separate litigation against a third party." *McGuire*, 1 F.3d at 1317.

The Sixth Circuit has not ruled upon the issue. The Tenth Circuit, however, did in *J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102. Simplot entered into an agreement to purchase one of Chevron's pipelines. Chevron agreed to indemnify Simplot for liabilities arising from operating the pipeline before the deal's closing date. Subsequently, a third party filed suit against Chevron and Simplot. After prevailing against the third party, Simplot asked Chevron to pay its attorney fees, but Chevron refused. Simplot then sued Chevron for the fees and costs that it had incurred in the third party litigation, alleging that Chevron had breached its duty to defend and indemnify under their purchase agreement. Chevron demanded a jury trial.

The district court granted partial summary judgment in favor of Simplot, finding that Chevron had breached its contractual duty to defend Simplot in the third party litigation. The district court, however, denied Chevron's request for a jury trial on the amount of the attorney fees for which it was liable to Simplot. The district court determined that Simplot's request for fees and costs was not "inequitable or unreasonable" and, therefore, awarded Simplot its requested damages.

On appeal, the Tenth Circuit noted as follows:

Simplot does not seek the fees as an element of costs awarded to the prevailing parties, which raises legal issues collateral to and separate from the decision on the merits. Rather, Simplot seeks the fees as the measure of damages resulting from Chevron's breach, as an element of damages under the contract.

-3-

*Id.* at 1116.  Because the fees constituted the measure of compensatory damages resulting from Chevron's breach of contract, the court in *Simplot* concluded that the action was legal in nature.  As such, Chevron was entitled to a jury trial.  "That the measure of damages happens to be attorneys' fees does not in and of itself change the nature of Simplot's claim."  *Id.*

The facts of *Simplot* are analogous to the facts of this case and the reasoning of the Tenth Circuit is compelling.  The decision  is further supported by Rule 54 of the Federal Rules of Civil Procedure, which recognizes a difference between free-standing breach of contract claims and prevailing party claims.  Rule 54(d)(2)(A) states that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion *unless the substantive law requires those fees to be proved at trial as an element of damages*."  FED. R. CIV. P. 54(d)(2)(A) (emphasis added).  The advisory committee's note to the 1993 Amendments of Rule 54(d)(2) explains that the rule "does not . . . apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury."

Timken has asserted a breach of contract claim.  As damages, Timken has requested its reasonable attorney fees from the Rolls Royce litigation.  At its heart, this is a legal action for compensatory damages, and a jury trial is required to determine the reasonableness of the fees and costs.  Timken's motion to strike Alcor's jury demand, therefore, is denied.

## III.    MOTIONS IN LIMINE

### A.    Timken's Motion

Alcor asserts that it is liable only for "net" losses incurred by Timken in defending the Rolls-Royce litigation. Timken, on the other hand, seeks to preclude Alcor from introducing evidence that the fees it paid in relation to the Rolls-Royce litigation should be offset as proposed by Alcor.

The Agreement defines "Losses" as follows:

"Losses" means any and all claims, demands, Liabilities, losses, fines, costs, expenses, royalties, deficiencies, judgments, awards, settlements, taxes or damages (whether absolute, accrued, conditional or otherwise and whether or not resulting from third party claims), including interest and penalties with respect thereto, consequences arising from Actions or Orders, and out-of-pocket expenses and reasonable attorneys' and accountants' fees and expenses incurred in the investigation or defense of any of the same or in asserting, preserving, or enforcing an applicable Person's rights hereunder or under any Ancillary Agreement.

[Dkt. 44-6, at 7].

Curiously, the Agreement can be read such that "'Losses' means any and all . . . losses." Alcor has seized upon this reading and uses the dictionary to define the meaning of the term "losses." According to Alcor and the *Merriam-Webster's Collegiate Deluxe Dictionary*, the term "losses" should be read to mean a "failure to gain, win, or obtain." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1998). Alcor argues that this definition, combined with the fact that Losses must be "actually incurred" under the indemnification provision, means that Alcor is only liable to Timken for net losses resulting from Alcor's breach. Alcor next argues that because the settlement between Timken and Rolls-Royce resulted in an ongoing business relationship, the gain to Timken from this relationship must be applied to offset the loss that Timken incurred. Alcor also argues that the attorney fees related to the counterclaim filed by Timken against Rolls-Royce and the negotiation of the business relationship itself should be deducted when calculating the net losses.

Under Delaware law, which controls the Agreement, the proper construction of a contract is a question of law. *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992). The "ordinary and usual" meaning of contractual language controls, unless that language is ambiguous. *Id.* That two parties ascribe different meanings to a term does not render the term

-5-

ambiguous. *Id.*  Rather, a court must only find ambiguity where the contested terms are "reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.*  "The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.*

Examining the terms of the contract, the Court finds Alcor's position untenable.  In arriving at this conclusion, the Court relies on a basic "canon of contract construction that effect should be given to all of a contract's provisions and that no provision should be rendered useless or inexplicable." *See Ross Handling & Mgmt. Co. v. Advance Realty Group, LLC*, C.A. No. 4113-VCN, 2010 WL 1838608, at *6 (Del. Ch. Apr. 18, 2010) (quotation omitted).

To read the term "losses" as Alcor argues would supplant the other items in the list of enumerated "Losses" and deprive them of their effect.  In fact, to rely on the dictionary definition of the term "losses" renders the formal definition of the term "Losses" in the Agreement unnecessary and mere surplusage.  If the parties had intended the dictionary definition of the term "losses" to apply, there would have been no need to formally define it in the Agreement.   Furthermore, that Timken's Losses may have been offset by a separate gain does not mean that the loss was not "actually incurred."  Taken together, there is no indication from the plain meaning of the contract that the parties intended for Alcor to merely be liable for net losses.  Rather, the plain meaning of the contract unambiguously states that Alcor is liable for Losses, which include all of Timken's reasonable attorney fees and expenses related to the Rolls-Royce litigation.  To use potential profits from the business dealings as a setoff would potentially cause the calculation of losses to be an open question for the duration of the dealings.  To do so would also presume that without the litigation there would have been no business relationship developed.

Alcor also argues that the time spent prosecuting Timken's counterclaim should be allocated and deducted from the attorney fees for which Alcor is responsible.  The Agreement provides for the

-6-

indemnification of losses, without distinguishing between claims and counterclaims.  Furthermore, "[c]ounterclaims arising from the same transaction as the original complaint" must be indemnified as defense costs under Delaware law.  *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992). Timken asserted a single compulsory counterclaim in the Rolls-Royce litigation, requesting that the court determine "whether or not Rolls Royce has any protectable proprietary interest in the drawings and technical information . . . in the Allison Model 250 engine."  [Dkt. 44-7, at 12].  Clearly, this counterclaim arises from the same transaction as that described in the Rolls-Royce complaint.  It sought a declaration that Timken through Alcor did not violate intellectual property rights as alleged in the complaint.  Thus, the purpose of the counterclaim was to negate the affirmative claim made by Rolls-Royce, and evidence of the reasonable fees associated therewith will not be banned.

On the other hand, if, hypothetically, Alcor can establish that Timken is seeking indemnification for fees related to negotiating the terms of the ongoing business relationship between Timken and Rolls-Royce that are unrelated to the settlement of the subject litigation, Alcor may present such evidence and argument at trial.  This would not be a setoff against amounts owed under the Agreement as these fees would not be subject to the indemnification provision at all.  The trier of fact must determine what portion, if any, of the indemnification sought is outside the scope of the settlement.

Accordingly, Timken's motion to preclude Alcor from offering evidence relating to the value of the Rolls-Royce business relationship is granted.  To the extent that Timken seeks to preclude Alcor from introducing evidence that the contested invoices improperly include fees associated with the negotiation of a new business relationship with Rolls-Royce, Timken's motion is denied.  Alcor, however, will be barred from arguing that the reasonable fees associated with Timken's counterclaim in the Rolls-Royce litigation are not subject to indemnification.

### B.      Alcor's Motions

*1.      Redacted Attorney Bills*

Alcor requests that Timken be precluded from offering redacted attorney bills into evidence.

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides, in part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1). During discovery, Alcor requested all of the "time sheets, billing summaries, invoices, expense records [and] time valuations" relating to the Rolls-Royce litigation that Timken received from its attorneys. Timken produced invoices, but redacted some information to protect attorney-client privilege and work product. Alcor requested unredacted invoices and backup information, but Timken again refused, asserting privilege. Alcor took no further action until filing the instant motion in limine, wherein Alcor seeks to invoke sanctions pursuant to Rule 37(c)(1).

During discovery, the parties agreed to cooperate. Timken made efforts to explain its position with regard to the redacted attorney fee bills, and Alcor never requested the district court's assistance in obtaining the allegedly privileged information. Local Rule 37.1, which requires parties to contact the court in the event of discovery disputes, also provides that a certain set of "procedures shall apply" in resolving such disputes. By all appearances, Alcor did not follow these procedures.

In addition, Alcor has not established that Timken's redaction of the invoices was improper. Counsel may redact invoices to protect privileges and work product unless the redacted invoices "do not provide [the adverse party] with a fair indication of the work performed." *Zaman v. Amedeo Holdings, Inc.*, No. 3115-VCS, 2008 Del. Ch. LEXIS 60, at *135 (Del. Ch. May 23, 2008). Here, Alcor has not established that the invoices combined with the docket and filings from the Rolls-Royce litigation fail to provide a fair indication of the work performed. Furthermore, Timken has the burden of establishing the reasonableness of the fees, presumably through witnesses knowledgeable about the work performed and the necessity of performing it. Alcor will be free to cross examine these witnesses or present contrary evidence. Moreover, Alcor's own involvement in the Rolls-Royce litigation makes

-8-

it "well positioned to point out instances where [Timken's] counsel got out of bounds." *Id.*  Thus, the Court will not ban the introduction of the bills pursuant to Rule 37(c)(1).

2.    *Misappropriation*

Alcor argues that Timken should be precluded from offering evidence claiming that Alcor misappropriated Rolls-Royce's intellectual property.  To the extent this argument is based upon a discovery dispute where Alcor made no attempt to comply with Local Rule 37.1 in resolving the same, the Court denies Alcor's request.  However, the Court makes no determination as to the relevance of such evidence at trial.

3.    *Settlement Gain*

Alcor argues that Timken should be precluded from offering argument or evidence to dispute the amount of gain it received from the Rolls-Royce litigation.  Because the Court has granted Timken's motion in limine in part, this portion of Alcor's motion is denied as moot.

4.    *Counterclaims*

Alcor also argues that it is not liable for fees associated with Timken's prosecution of a counterclaim in the Rolls-Royce litigation.  For the reasons set out above, the Court denies this portion of Alcor's motion.

5.    *Expert Testimony*

Alcor argues that the Court should exclude the testimony of Timken's expert witness, Victoria Vance, asserting that she is unqualified as an expert and that her opinion is unreliable.

Rule 702 of the Federal Rules of Evidence, governing the admissibility of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

-9-

FED. R. EVID. 702. The Supreme Court, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), held that the trial judge "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." The Court further explained in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), that this "gatekeeping" function applies more generally to "all expert testimony."

The objective of the gatekeeping function is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. Although *Daubert* lists several factors to consider in determining an expert's reliability, they are not intended to be a "definitive checklist or test." *Daubert*, 509 U.S. at 593. This is especially true when considering non-scientific testimony. "The trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152.

The Court finds that Vance should be allowed to testify. She was educated at John Carroll University and Cornell Law School. She has practiced as a litigator for twenty-eight years, handling commercial cases. For seven years, she served as Senior Counsel and Director of Litigation for the Cleveland Clinic. Her duties included overseeing the performance of, and fees charged by, outside counsel. She is clearly qualified by "knowledge, skill, experience, training, [and] education" to present testimony in this case. With regard to the reliability of her evaluation, it is more appropriate to admit the evidence than to keep it from the jury because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Benton v. Ford Motor Co.*, 492 F.Supp.2d 874, 877 (S.D. Ohio 2007) ("To be sure, the Sixth Circuit agrees that, where the opposing side has the opportunity to cross-examine an expert regarding his qualifications and where

-10-

the jury is properly instructed to determine for itself the weight and credibility to be given to the expert's testimony, an argument opposing admissibility of the testimony on the grounds that it is outside the witness's area of expertise must fail.").  Many of Alcor's arguments may well impact the weight or credibility given to the expert opinion by the trier of fact in this matter.  For instance, Alcor will be free to cross examine Vance about the adequacy of her review and the reasonableness of the time Timken's attorneys devoted to the Rolls-Royce litigation, and offer argument on these issues at trial.  Alcor's contentions are not, however, sufficient grounds to exclude Vance's testimony.

IV.    CONCLUSION

For the foregoing reasons, Timken's motion to strike Alcor's jury demand is denied, Timken's motion in limine is granted in part, and Alcor's motions in limine are denied.

IT IS SO ORDERED.

s/Greg White
GREG WHITE
UNITED STATES MAGISTRATE JUDGE

**Dated:** July 2, 2010